COBB, Judge.
The issue on this appeal is whether the trial court erred in awarding the ap-pellee/wife, Gail Jablonski, rehabilitative alimony of $750.00 per week for two years.
The parties were married in 1981, a second marriage for the husband, Richard, and the third for the wife. No children were born of the marriage. He pays child support for three children from a former marriage; she receives it for two. At the time of this marriage, the husband was an ophthalmologist and the wife was an assistant in his office earning from $100.00 to $200.00 per week. Pursuant to the 1987 dissolution judgment, the wife was awarded the parties’ condominium (wherein there was a $15,000.00 equity), a one-half interest in their home to be partitioned (wherein the equity was $30,000.00), all the furniture, and $50,000.00 lump sum alimony, payable in $10,000.00 annual increments. The wife’s income as an assistant in a medical office, at the time of dissolution, according to her testimony, was $500.00 bi-weekly, or $13,000.00 annually. The trial court apparently based its award of rehabilitative alimony on testimony elicited from the wife on redirect and recross-examination:
Q. What are your employment plans for the future? Are you going to stay where you are now?
A. Absolutely, I want to stay in the area because it is my home for my children. This is where we want to live.
Q. How do you plan to get a job to get enough money to pay your expenses you’re showing the Court?
A. I can’t get a job to make enough money right now to pay the expenses.
Q. Do you have any plans on how you are going to increase your income to meet those expenses?
A. Well, possibly through other training and education.
Q. What other training or education do you have plans for?
A. Well, I could become a certified ophthalmic technologist.
Q. What does a technologist do?
A. A certified ophthalmic technologist is about the highest level you can obtain—
A certified ophthalmic technologist, to my knowledge, is about the highest training you can receive in the field of ophthalmology without being a physician.
*48 Q. Would you earn substantially more in that area than you are earning at the present time?
A. Of course.
Q. How long will it take you to complete that training to become that type of technologist?
A. I would guesstimate — I can’t be certain, but I would guesstimate like two or three years.
Q. Would you be able to work during that period of time to help pay your living expenses while you’re getting that education?
A. I have not investigated it thoroughly.
Q. Is it your desire to pursue that avenue of employment?
A. I need to pursue something. I just can’t take visions on patients and expect to earn my own living.

ON RECROSS-EXAMINATION:

Q. Where do they teach this certified ophthalmic technologist course?
A. I haven’t investigated it. It is just something that I know I have to produce more income for myself as best I can, and I obviously need more training.
I think probably in Gainesville, or Jacksonville, or something. Possibly there are courses — I know there are courses for it.
Q. That is not a program that you have started on?
A. Started on at this time?
Q. Yes.
A. No.
Q. Do you have any catalogs explaining the course requirements for that program from anyone?
A. No.
Q. Have you ordered any catalogs?
A. No.
Q. Have you interviewed with anybody or any counselors; made any inquiries of that kind?
A. No. I just know it is something that might produce a nice income for me to help myself to live as a single parent.
Q. You don’t know how many credit [sic] are required to get that certification?
A. It is a program. It is not so many— It’s a particular program designed to produce that particular—
Q. I understand.
Some of the credits that you have already earned out at DBCC presumably would apply toward this program?
A. Probably not. I think it’s a program in its own that you have to—
My degree now is just in the surgical phase.
Q. I understand, but don't you take basic courses like medical records terminology and anatomy, and things of that sort our here at DBCC?
A. Yes, but whether this particular course or career would accept that and let it count as — I don’t know.
Q. Neither one of us knows because you haven’t investigated that at all until this point?
A. I’m certainly going to do that.
Q. In the future?
A. Very soon.
Q. You haven’t asked anybody and sat down and discussed how many credits that you already have that would apply, and how long would it take you to complete whatever additional credits you would need for this program?
A. Mr. Barr, I’m just barely getting my life together. No, I haven’t sat down and decided what five years from now—
Q. Okay.
A. I’m trying to do — I think I’ve done well by employing myself at all at this point.
We do not believe a basis for the rehabilitative alimony award was established. First, the wife, who was employed throughout the marriage, was in a much better economic status at the end of the marriage then at its commencement both in regard to income and assets. See Fowler v. Fowler, 516 So.2d 113 (Fla. 5th DCA 1987); Long v. Long, 505 So.2d 10 (Fla. 5th DCA 1987); McDonald v. McDonald, 429 So.2d 795 (Fla. 4th DCA 1983); and Gersten v. Ger- *49 sten, 433 So.2d 57 (Fla. 3d DCA 1983). Secondly, from the wife’s testimony it is apparent that her plans for further training and education in order to become a certified ophthalmic technologist are equivocal, at best. For the time being, she “absolutely” wants to stay in the area of Volusia County, where no such course is offered. She has no concrete plans and has not inquired into attending courses in Gaines-ville or Jacksonville, assuming such courses are available at either place. She has not investigated the time or cost for such a course. Indeed, there was no evidence as to the cost of such a course adduced below, and there was no basis whatsoever for the $78,000.00 figure selected by the trial court. See Pardue v. Pardue, 518 So.2d 954 (Fla. 1st DCA 1988).
We find no merit in the husband’s other points on appeal nor in the cross-appeal of the wife seeking additional alimony and property distribution. The judgment below is affirmed, except for the award of rehabilitative alimony which is reversed.
AFFIRMED IN PART AND REVERSED IN PART.
SHARP, C.J., and DANIEL, J., concur.